

**FOR PUBLICATION**

FILED

JUN - 1 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                              )     Case Nos. 08-37271
                                    )               08-37272
KOBRA PROPERTIES, a California      )               08-37273
General Partnership, KOBRA          )               08-38105
PRESERVE, LLC, VERNON STREET        )
ASSOCIATES, LLC, ROCKY RIDGE        )     Jointly Administered
CENTER, LLC,                        )     Under Bankruptcy No.
                                    )     08-37271
                                    )
                        Debtor(s).  )
_____)

**OPINION**

Donald W. Fitzgerald, Felderstein Fitzgerald Willoughby &
Pascuzzi LLP, Sacramento, California, prospective attorneys for
chapter 11 trustee, Steven L. Victor

Judith C. Hotze, United States Department of Justice, Sacramento,
California, for Acting United States Trustee, Region 17, Sara L.
Kistler

Donna T. Parkinson, Parkinson Phinney, Sacramento, California,
prospective attorneys for the Official Committee of Unsecured
Creditors

Susan S. Davis, Cox, Castle & Nicholson LLP, Los Angeles,
California, for Dexia Real Estate Capital Markets

Michele Sabo Assayag, Assayag & Mauss, Costa Mesa, California,
for Union Bank of California, N.A.

Ronald H. Sargis, Hefner, Stark & Marois LLP, Sacramento,
California, for Exchange Bank

Mary Olden, McDonough, Holland & Allen PC, Sacramento,
California, for KeyBank National

Peter L. Duncan, Pyle Sims Duncan & Stevenson APC, San Diego,
California, for Jack in the Box

Hayne R. Moyer, Kronick, Moskovitz, Tiedemann & Girard,
Sacramento, California, for Umpqua Bank

1    Lisa Lenherr, Law Offices of James A. Tiemstra, Oakland, California, for Bank of the West

2

3    Brian A. Bobb, Jeffer, Mangels, Butler & Marmaro LLP, San Francisco, California, for Mechanics Bank

4    R. Dale Ginter, Downey Brand LLP, Sacramento, California, for general partners of Kobra Properties, Abolghassem Alizadeh and

5    Kobra Alizadeh

6    William D. Schuster, Allie & Schuster, P.C., Santa Ana, California, for HD Supply Construction Supply, Ltd., a limited

7    partnership dba HD Supply White Cap Construction Supply formerly White Cap Construction Supply, Inc.

8

9    Vincent J. Novak, Morrison & Foerster, San Francisco, California, for Sterling Savings Bank

10    Martha E. Romero, Romero Law Firm, Whittier, California, for County of Placer, California, a California taxing authority

11

12    Gerald P. Kennedy, Procopio, Cory, Hargeaves & Savitch, San Diego, California, for Key Real Estate Group

13    Scott Olson, Sedgwick Detert, San Francisco, California, for First Horizon Home Loan Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEIN, Bankruptcy Judge:

The question is whether 11 U.S.C. § 327(a) allows a law firm to switch clients so as to represent a newly-appointed chapter 11 trustee after having represented the official committee of unsecured creditors.  A diligent month-long search by the trustee for counsel has been fruitless.  The exigencies of this complex operating real estate situation imperil the estates if the trustee remains stymied by lack of counsel.

There has been full, candid, and complete disclosure to all parties in interest.  The committee consents to the withdrawal and re-employment and has located substitute counsel.  Any action by the trustee against the committee or its members will be pursued by separate conflicts counsel.  The secured creditors, as well as the principals of the jointly-administered debtors, either support or do not oppose the change in counsel.  The United States trustee objects that the potential for appearance of impropriety or misplaced loyalties warrants careful scrutiny for conflict of interest.

The dearth of suitable eligible counsel, the universal consent by creditors following full disclosure, and the general coincidence of economic interests of the unsecured creditors and of the trustee in optimizing the value of these estates, combine to warrant GRANTING the chapter 11 trustee's motion to employ the withdrawing committee counsel.

Facts

These four jointly administered cases were filed between November 25 and December 9, 2008.  The lead case is Kobra

- 3 -

Properties, a California general partnership.  The other debtors,
Kobra Preserve, LLC, Vernon Street Associates, LLC, and Rocky
Ridge Center, LLC, are all California limited liability companies
that are affiliates of Kobra Properties and are part of a complex
structure of another twenty-one affiliates that are not debtors.

The debtors construct, own, and/or operate eighty-eight
diverse commercial properties located primarily in California's
Central Valley.  Some of the affiliates operate enterprises,
including franchised restaurants (e.g., Jack in the Box, T.G.I.
Friday's, Qdoba), that are tenants of the debtors.

The scheduled liabilities are $418 million against assets
scheduled at $665 million and estimated by the trustee at $375-
$400 million.  The largest creditor is Wells Fargo Bank, which
claims $154 million in its own right and $71 million as
administrative agent and sole lead arranger of a loan syndicate.

At the outset of the case, the debtors in possession
proposed hiring a "chief restructuring officer" (CRO) in an
effort to defuse fear and loathing by various banks regarding
self-dealing and lack of transparency.  This elicited skepticism
because of the vagueness of the CRO concept in the context of
chapter 11 (as opposed to the turnaround and workout environment)
and the inability to articulate whether and to whom a CRO would
owe fiduciary and loyalty duties and how those duties would
contrast with the duties of a chapter 11 trustee.  The initial
CRO request was withdrawn.

When, months later, the debtors in possession revived their
CRO proposal in the face of persistent cash collateral issues,
the denouement was agreement that the proposed CRO could be

- 4 -

1  appointed as chapter 11 trustee.  Accordingly, the debtors, the

2  creditors' committee, and Wells Fargo Bank stipulated to

3  appointment of a chapter 11 trustee and jointly recommended the

4  individual proposed as CRO.  The United States trustee,

5  consulting with parties in interest per 11 U.S.C. § 1104(d),

6  accepted the recommendation and appointed Steven L. Victor of

7  Development Specialists, Inc., effective April 2, 2009.

8      The chapter 11 trustee promptly began interviewing potential

9  counsel and, there being numerous institutional creditors, was

10 frustrated as one prospective counsel after another bowed out on

11 account of conflicts or inability to undertake an immediate

12 labor-intensive representation requiring business expertise and

13 sufficient staff to handle complex chapter 11, mechanics' lien,

14 trade creditor, and lender security issues.

15     The search effectively exhausted the roster of law firms

16 with chapter 11 skills in the Eastern District of California

17 (many of which were already in the case representing creditors).

18 The trustee extended the search to other districts.

19     There are two handicaps in attracting counsel from a

20 distance.  First, the peculiarities of the case potentially

21 require substantial legwork at the debtors' various locations in

22 the Central Valley.  Worse, the main immediate source for payment

23 of professional fees comes from encumbered rents that leave

24 counsel in the unappetizing position of dependancy on negotiating

25 carve-outs from cash collateral of creditors who are not happy.

26     By the end of April, the trustee concluded that the only

27 practicable solution would be to employ counsel for the committee

28 of unsecured creditors, Felderstein Fitzgerald Willoughby &

Pascuzzi LLP, which had earlier indicated that it would consider

such a move only as a last resort and then only if permitted by

the Bankruptcy Code, endorsed by the committee, and supported by

the major parties to the chapter 11 cases.

Meanwhile, litigation pressures were approaching a crisis.

Throughout April, the trustee had been appearing in court almost

weekly without representation, pleading for time while fending

off stay relief motions and trying to respond to cash collateral

issues raised by other creditors.

The motion to employ the Felderstein Fitzgerald firm was

filed May 1, 2009, accompanied by papers fully disclosing the

situation.  Dexia Real Estate Capital Markets filed a

nonobjection "objection," supporting employment but noting it did

not consent to use of cash collateral.  The United States trustee

objected based on a concern that the Felderstein Fitzgerald firm

"may hold a materially adverse interest, based on either an

appearance of impropriety or a potential conflict of interest,

due to its prior representation of the Committee in this case."

Findings and a ruling authorizing the employment were made

orally on the record at the close of the hearing on May 13, 2009,

so that the trustee could proceed immediately.  This memorandum

decision further memorializes that ruling.


Jurisdiction

Jurisdiction is founded upon 28 U.S.C. § 1334(a).  The

trustee's employment of counsel is a core proceeding.  28 U.S.C.

§ 157(b)(2)(A).

Analysis

The question resolves into three overlapping inquiries derived from the requirements of § 327(a) that a professional be "disinterested" and "not hold or represent an interest adverse to the estate" and of § 327(c) that employment be disapproved if there is an "actual conflict of interest."

Thus, as a matter of law, is the former (it is assumed that withdrawal has occurred) counsel for the unsecured creditors' committee employed under 11 U.S.C. § 1103 eligible to be employed by the trustee under § 327(a)?  If such employment is not barred as a matter of law, then the question becomes whether the employment should be authorized in this instance.  Both questions are answered in the affirmative.

I

Procedure first.  In employment matters, the fundamental procedural requirement is that the applicant make full, candid, and complete disclosure of all of the professional's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed by the office of the United States trustee.  Fed. R. Bankr. P. 2014(a); Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 880-82 (9th Cir. 1995); Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney (In re Tevis), 347 B.R. 679, 693-94 (9th Cir. BAP 2006); Com-1 Info., Inc. v. Wolkowitz (In re Maximus Computers, Inc.), 278 B.R. 189, 195-96 (9th Cir. BAP 2002); In re B.E.S. Concrete Prods., Inc., 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988); United

- 7 -

1  States v. Azevedo (In re Azevedo), 92 B.R. 910, 910-11 (Bankr.

2  E.D. Cal. 1988).

3      The duty to disclose is a continuing obligation as to which

4  the risk of defective disclosure always lies with the discloser.

5  Park-Helena Corp., 63 F.3d at 880-81; cf. Official Comm. of

6  Unsecured Creditors v. Michelson (In re Michelson), 141 B.R. 715,

7  719-20 (Bankr. E.D. Cal. 1992) (defective § 1125 disclosure).

8      Disclosure that later turns out to be incomplete can be

9  remedied by denial of fees.  Park-Helena Corp., 63 F.3d at 880-

10  81; cf. 11 U.S.C. § 328(c) (retroactive denial of compensation).

11  Accordingly, this Sword of Damocles should be omnipresent in the

12  mind of counsel.

13      Here, by all appearances, there has been full, candid, and

14  complete disclosure of the situation.  A hearing conducted on

15  notice to all parties in interest was held, in which a

16  substantial majority of those who have heretofore participated in

17  the case (and should have reason to know of defective disclosure)

18  appeared, were heard, and articulated no such concerns.  Thus,

19  the employment is in a procedural posture to be decided.

20

21                              II

22      Whether employment by the trustee under § 327(a) of counsel

23  formerly employed to represent a committee pursuant to § 1103

24  may, as a matter of law, be authorized subdivides into three

25  overlapping questions posed by §§ 327(a) and (c).  Is the counsel

26  "disinterested"?  Does the counsel "hold or represent an interest

27  adverse to the estate"?  Is counsel affected by an "actual

28  conflict of interest"?

                              - 8 -

## A

The first requirement of § 327(a) is that the prospective counsel be "disinterested." That term is defined in a manner that requires a journey through the definitions of "disinterested person," "person," "creditor," "insider," "affiliate," and "relative." 11 U.S.C. §§ 101(2) ("affiliate"), 101(10) ("creditor"), 101(14) ("disinterested person"), 101(31) ("insider"), 101(41) ("person") & 101(45) ("relative").

The trip report from that trek reveals that counsel's only arguable link to the definition is its prior representation of the creditors' committee. While a creditors' committee is not mentioned in the definitions, and notwithstanding that the representation of a creditors' committee does not entail representation of any specific creditor, the analysis of the status of "creditor" in the context of the "disinterested" requirement is instructive.

It is black-letter law that a "creditor" is not "disinterested." 11 U.S.C. § 101(14)(A).

Yet, § 327(c) makes clear that an attorney's representation of a creditor does not per se deprive that attorney of "disinterested" status, but rather becomes a potential disqualifier for employment to represent the trustee on the conceptually distinct theory of "actual conflict of interest." 11 U.S.C. § 327(c).

If an attorney may be "disinterested" despite representing a creditor, it follows that the Felderstein Fitzgerald firm's prior representation of the creditors' committee does not render the firm per se ineligible for employment as not "disinterested."

B

The next question is whether the proposed counsel holds or represents an "interest adverse to the estate."  The requirement that prospective counsel not "hold or represent an interest adverse to the estate" is prescribed by § 327(a) and, redundantly, as an element of the definition of "disinterested" at § 101(14)(C).  Moreover, representing or holding at any time during the case an "interest adverse to the interest of the estate with respect to the matter on which such professional person is employed" constitutes a basis to deny all compensation. 11 U.S.C. § 328(c).

The prohibition of representing or holding an "interest adverse to the estate" is a facet of the policy of ensuring that all professionals appointed pursuant to § 327(a) tender undivided loyalty to the estate and provide untainted advice and assistance in performance of their duties.  Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994); Tevis, 347 B.R. at 687.

To hold an interest adverse to the estate is either (1) to possess or assert an economic interest that would tend to decrease the value of the estate or create an actual or potential dispute with the estate or (2) to possess a predisposition that would amount to a bias against the estate.  Tevis, 347 B.R. at 688 (collecting cases).

To represent an adverse interest is to serve as an attorney for an entity holding such an interest.  Tevis, 347 B.R. at 688.

What constitutes "adversity" is not defined in the Bankruptcy Code and, although arguably a federal question, is informed by reference to the ethical rules of the legal

profession governing adversity in a manner that is analogous to the imposition of attorney discipline by federal courts, which do not have the benefit of uniform federal procedure.

Federal trial courts normally apply ethical rules of the state in which the court is located.  See Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1062 (9th Cir. 2009); Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1198 (9th Cir. 1999); Tevis, 347 B.R. at 679.

By local rule, the Eastern District of California has adopted the Rules of Professional Conduct of the State Bar of California as the standards of professional conduct in the district and bankruptcy courts.  Local Rule 83-180(e), E.D. Cal., incorporated by Local Bankr. Rule 1001-1(c), E.D. Cal.

The relevant California Rules of Professional Conduct regarding overlapping employment provide:

> (C)  A member shall not, without the informed written consent of each client:
> (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
> (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
> (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.
>         . . .
> (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

CAL. RULES OF PROF'L CONDUCT R. 3-310(C) & (E); accord, MODEL RULES OF PROF'L CONDUCT R. 1.7.

1    In each instance, informed written consent is virtually

2  essential to permitting representation in such circumstances.

3    The concerns are to assure both undivided loyalty and

4  confidentiality.  Where an attorney is torn by conflicting

5  loyalties, there is a danger of inadequate representation that

6  threatens the interests of all parties to the bankruptcy case and

7  compromises the ability of the court to render justice.  Tevis,

8  347 B.R. at 689.  Likewise, preserving confidentiality is a

9  cornerstone of legal ethics.  San Francisco v. Cobra Solutions,

10  Inc., 135 P.3d 20, 24 (Cal. 2006); People ex rel Dep't of Corps.

11  v. SpeeDee Oil Change Sys., Inc, 980 P.2d 371, 378 (Cal. 1999)

12  ("SpeeDee").  As the California Supreme Court has put it, the

13  "paramount concern must be to preserve public trust in the

14  scrupulous administration of justice and the integrity of the

15  bar."  SpeeDee, 980 P.2d at 378.

16    When the representation of multiple clients is concurrent,

17  the duties of loyalty and confidentiality combine to make it very

18  difficult to overcome the "hold" or "represent" disqualification

19  imposed by §§ 101(14)(C), 327(a), and 327(c).

20    Concurrent representation in California, without informed

21  consent, carries with it a strong presumption of disqualification

22  "regardless of whether the simultaneous representations have

23  anything in common or present any risk that confidences obtained

24  in one matter would be used in the other."  SpeeDee, 980 P.2d at

25  379; accord, Tevis, 347 B.R. at 691.

26    Successive representation, in contrast, is subject to a

27  substantial relationship test.  The dominant concern is the

28  "enduring duty to preserve client confidences" regarding

- 12 -

1  information imparted to counsel during the prior representation.

2  If an attorney undertakes to represent an adversary without

3  obtaining informed written consent, the former client may

4  disqualify the attorney by demonstrating a "substantial

5  relationship" between the subjects of the prior and subsequent

6  representations.  <u>Cobra Solutions, Inc.</u>, 135 P.3d at 25.  The

7  requisite substantial relationship exists if the subjects of the

8  representations make it likely that the attorney, who did not

9  obtain the informed written consent of the former client,

10  acquired confidential information that is relevant and material

11  to the subsequent representation.  <u>Id</u>.

12      The withdrawal by the counsel for the committee of unsecured

13  creditors to be followed by representation of the chapter 11

14  trustee is an instance of successive representation.

15      Informed written consent is the standard solution to the

16  problem under California law.  Here, the committee, informed with

17  the advice of its replacement counsel, gave its written consent

18  for the Felderstein Fitzgerald firm to shift to representing the

19  chapter 11 trustee.  This constituted the informed written

20  consent required to satisfy California's ethical requirements.

21      While informed written consent ordinarily suffices in

22  private litigation, the Bankruptcy Code adds an additional

23  dimension by opening the opportunity for any party in interest to

24  raise the question of whether the firm holds or represents an

25  interest adverse to the estate.

26      In other words, informed written consent is a necessary, but

27  not sufficient, precondition to a § 327(a) employment that

28  entails concurrent or successive representation.  By virtue of

- 13 -

1 &sect; 327(a), what is otherwise a matter between counsel and client

2 becomes a collective public affair involving the entire body of

3 interests in the case under title 11.

4      As a matter of procedure, an application for an order of

5 employment under &sect; 327(a), accompanied by the requisite full,

6 candid, and complete disclosure, need only be filed and

7 transmitted to the United States trustee.  FED. R. BANKR. P.

8 2014(a).  The court, however, has discretion to require full

9 notice to all parties in interest and an actual hearing.

10      When, as here, an issue of informed consent (or "waiver of

11 conflict") in connection with a concurrent or successive

12 representation arises with respect to a &sect; 327(a) employment,

13 prudence dictates full notice and actual hearing.

14      The hearing following full notice established that no

15 creditor objected to the switch of the Felderstein Fitzgerald

16 firm from representing the committee to representing the chapter

17 11 trustee.  Indeed, the creditors and principals of the debtors

18 supported the employment.

19

20                                       C

21      The United States trustee did, more as a formal matter than

22 out of genuine opposition, object.  The effect of that objection

23 was to trigger the &sect; 327(c) requirement that the court

24 specifically scrutinize the question of conflict of interest:

25         (c) In a case under chapter 7, 12, or 11 of this title,
   a person is not disqualified for employment under this
26    section solely because of such person's employment by or
   representation of a creditor, unless there is objection by
27    another creditor or the United States trustee, in which case
   the court shall disapprove such employment if there is an
28    actual conflict of interest.

                                  - 14 -

11 U.S.C. § 327(c).

In proceeding with this analysis, the court is mindful that representing an official committee of creditors is not, strictly speaking, "employment by or representation of a creditor"; nevertheless the spirit of the statute — and spirit counts for much in a context in which appearances are important — contemplates the review in order to assure the paramount requirement that the court act so as to assure public confidence in the integrity of the judicial process.

The salient point about the relationship of the committee of unsecured creditors and the chapter 11 trustee is that their interests fundamentally coincide in a fashion that does not present a conflict of interest. Stoumbos v. Kilimnik, 988 F.2d 949, 964-65 (9th Cir. 1993). Since liabilities appear to exceed the value of assets, the unsecured creditors are the persons at the margin who stand to gain and lose the most by the fate of the cases. Both have the same incentives to maximize the value of the estates by marshaling all available property and to defeat every imperfectly perfected lien and security interest that could otherwise diminish the value of the estates. The structural potential for conflict is negligible.

Nor are the type of confidential communications that may have occurred between the committee and its counsel at this early stage of the chapter 11 case likely to lead to adversity.

The prospect of the trustee objecting to a particular unsecured claim ought not to present a conflicts issue because committee counsel represents the committee, but does not represent individual unsecured creditors. In any event, as an

- 15 -

additional protection against the possibility of a conflict, it
has been agreed that any action that the trustee takes against
the creditors' committee or its members will be taken by separate
conflicts counsel to be employed if and when the need arises.

In short, the representation of the chapter 11 trustee by
the Felderstein Fitzgerald firm presents no conflict of interest
within the meaning of § 327(c). Hence, the firm is not precluded
as a matter of law from representing the chapter 11 trustee.

III

Having concluded that the proposed employment is permissible
as a matter of law, the question becomes whether any prudential
reason counsels against the employment. In other words, although
permissible as a matter of law, is there any factual reason why
it should not be approved? The answer is no.

There is no hint of any factor in the background of this
case that would raise an appearance of impropriety. Nor does a
potential for conflict of interest suggest itself.

To the contrary, the employment appears to be an efficient
solution to a perplexing problem. The stringent requirements of
§ 327(a) operate as a limit on concentration of the legal
profession in bankruptcy generally and especially in the
reorganization sector of the bankruptcy practice. These cases
have so many financial institution creditors that most firms with
the requisite expertise in matters of commerce and finance at the
scale required will have conflicts that would be difficult to
overcome. The economics of the cases are singularly unattractive
for counsel because payment might end up depending upon the

- 16 -

uncertainty of cash collateral "carve-outs" permitted by secured
creditors.  The consequence is that the cases have become dead in
the water for want of counsel for the trustee.

Employing the counsel for the unsecured creditors' committee
utilizes the skills of an able reorganization firm that has been
involved in the case from nearly the outset, that has essentially
the same point of view as the trustee by virtue of the alignment
of interests in these cases as between the trustee and the
committee, and that will not incur inefficiencies associated with
any new counsel's "learning curve."

***

For the foregoing reasons, and perceiving neither actual nor
potential conflict of interest, the United States trustee's
objection to the employment of the Felderstein Fitzgerald firm as
counsel for the chapter 11 trustee following its withdrawal from
representing the official committee of unsecured creditors is
OVERRULED, without prejudice to revisiting the issue by way of
§ 328(c).  The chapter 11 trustee's motion to employ is GRANTED.

Dated:  June 1, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION


Service List


This document does not constitute a certificate of service.  The parties listed below will be
served a separate copy of the attached document by the Bankruptcy Noticing Center.


Donald W. Fitzgerald
Felderstein Fitzgerald Willoughby & Pascuzzi LLP
400 Capitol Mall #1450
Sacramento CA 95814-4434

Judith Hotze
Office of the United States Trustee
501 I Street
Sacramento CA 95814

Donna T. Parkinson
Parkinson Phinney
400 Capitol Mall 11th Fl
Sacramento CA 95814

- - and all interested parties - -