2008-37271
FILED
January 06, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002327803

DONALD W. FITZGERALD, State Bar No. 095348
JASON E. RIOS, State Bar No. 190086
JOAN S. HUH, State Bar No. 225724
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
dfitzgerald@ffwplaw.com
jrios@ffwplaw.com
jhuh@ffwplaw.com

Attorneys for the Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>KOBRA PROPERTIES, a California general partnership et al.,[1]<br><br>Debtors. | CASE NO.: 08-37271-C-11<br><br>Chapter 11<br><br>Jointly Administered<br><br>DCN: FWP-28<br><br>Date: December 9, 2009<br>Time: 10:00 a.m.<br>Judge: Honorable Christopher M. Klein<br>Courtroom: 35, Department C |

**ORDER GRANTING TRUSTEES' MOTION FOR
USE OF CASH COLLATERAL (DECEMBER 2009-FEBRUARY 2010)**

The Motion to Authorize Use of Cash Collateral (December 2009-February 2010) ("Motion") filed by Steven L. Victor, the duly appointed and acting chapter 11 trustee (the "Trustee"), came on for hearing on December 9, 2009. Donald W. Fitzgerald of Felderstein Fitzgerald Willoughby & Pascuzzi LLP appeared for the Trustee. All other appearances were noted on the record. The Trustee on the record withdrew the request for relief regarding First

---
[1] The Debtors in these jointly administered bankruptcy cases are: Kobra Properties, a California general partnership, Kobra Preserve, LLC, a California limited liability company, Vernon Street Associates, LLC, a California limited liability company, and Rocky Ridge Center, a California limited liability company.

RECEIVED
January 05, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002327803

Tennessee National Association. Upon consideration of the Motion and pleadings and evidence submitted in support of and in opposition to the Motion, and all other documents in the record, the Court finds that: (1) the Court has jurisdiction over this matter pursuant to 28 U.S.C. 157 and 1334; (2) this is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A) and (O); and (3) notice of the Motion was sufficient under the circumstances and that no further notice need be provided, and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates, and no objections to the motion having been received or filed and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED**,

1. The Motion is granted subject to the terms and conditions set forth below. The terms "Debtors" and "estates" as used in this Order shall include Kobra Properties, a California general partnership; Kobra Preserve, LLC, a California limited liability company; and Vernon Street Associates, LLC, a California limited liability company, and shall exclude Rocky Ridge Center, a California limited liability company.

2. Subject to the terms and conditions of this Order, the Trustee is authorized to use cash collateral generated by the income-producing properties identified in the Exhibits B and C to the Declaration of Steven L. Victor filed in support of the Motion, in which the lenders identified in those Exhibits claim an interest (the "Lenders") to pay the items on the Budget attached to this Order and incorporated herein as Exhibit A (the "Cash Collateral Budget").

3. Monthly rent generated by each of the properties shall continue to be deposited in segregated accounts maintained by the Trustee and shall be used each month first to pay expenses associated with the specific property, if any, to which the account is related; next to pay any adequate protection payment to Lender(s) as provided for below and as set forth in Exhibit B to this Order; and finally to pay on a pro rata basis the allowed G&A expenses set forth in the Cash Collateral Budget. The determination of pro rata amounts shall be based on the amount of net cash available in each account each month from receipt of that month's rent and after payment of property-specific expenses and adequate protection payments.

4.  Subject to the restrictions set forth in this Order, the Trustee is authorized to use the cash collateral of each Lender other than Wells Fargo Bank, National Association ("Wells Fargo") through the earlier to occur of: (a) February 28, 2010, and (b) a Termination Event (as defined in paragraph 12 below). The Trustee is authorized to use the cash collateral of Wells Fargo through the earlier to occur of: (a) December 31, 2009, and (b) a Termination Event (as defined in paragraph 12 below).[2]

5.  Notwithstanding inclusion in the Cash Collateral Budget of line items for fees of professionals and the Trustee, no funds are authorized to be paid to any professionals or the Trustee for application to amounts due unless such payments have been approved or provided for by separate order. However, payments allocated in the Lender approved Cash Collateral Budget for specific professional fees or fees of the Trustee may be transferred by the Trustee to a segregated reserve account maintained by the Trustee or transferred to such professional to be held in a trust account (collectively the "Fee Reserve Accounts"), pending court approval to apply funds in the Fee Reserve Accounts to approved fees. The funds in the Fee Reserve Accounts shall be held solely for the benefit of such professional and/or the Trustee to whom the Cash Collateral Budget allocated those fees.

6.  To the extent rents received by the Trustee for a particular income-producing property for a particular month during the period of this Order are sufficient to make the adequate protection payments provided for on Exhibit B attached to and incorporated into this Order for that month, the Trustee is directed to use cash collateral to pay adequate protection payments to the Lenders in such amounts. Notwithstanding the forgoing, for the month of December 2009, the Trustee is authorized and directed to pay adequate protection payments to Wells Fargo in the aggregate amount of $424,060 ($205,634 on account of the syndicate loan pool, and $218,426 on account of the project loans); provided, however, in the event actual December rent collected from The Preserve or other real property serving as collateral for Wells Fargo exceeds rent presently projected to be collected by the Trustee, the adequate protection payments to Wells Fargo may be increased to up to $487,060 ($236,184 on account of the syndicate loan pool, and

$250,876 on account of the project loans) and such adequate protection payments shall be delivered to Wells Fargo in immediately available funds no later than December 20, 2009.

7. Wells Fargo is authorized to make, and the Trustee is authorized to accept, distribute and apply according to the direction of Wells Fargo, protective advances for payment of real property taxes and assessments on the real estate collateral of Wells Fargo. Each protective advance shall be secured by the Wells Fargo deed of trust encumbering the particular property on which the taxes and assessments paid were accrued. No such protective advance shall be entitled to allowance and payment as an administrative claim or unsecured claim.

8. All adequate protection payments must be made in certified funds or by wire transfer and, with the exception of adequate protection payments to Wells Fargo, must be delivered so as to be received by Lenders no later than the 26th day of each month during the term the Trustee is authorized to use such other Lender's cash collateral.

9. Notwithstanding acceptance by the Trustee of any rent check on any of the income producing properties and/or acceptance by a Lender of payment of an adequate protection payment from the proceeds of any such rent check, such acceptance shall be without waiver of, and with a complete reservation of, all rights of the Trustee or Lender to otherwise assert that the rent payment is less than that required under the applicable lease and/or that the tenant is in breach of such lease notwithstanding payment, and Trustee and Lender shall not be estopped to assert such rights. All rights of Lenders to contest any lease or rent modification agreed to by the Debtors as a breach of authority of a debtor in possession and/or as a breach of applicable loan documents and security interests are also reserved.

10. The Trustee shall provide a Cash Balance Report (showing receipts and disbursements) and a Variance Report (comparing cash collateral budget to actual figures) to the Lenders on the tenth business day of each month covering the prior month period.

11. By December 18, 2009, the Trustee is to deliver to Wells Fargo a revised budget prepared by the Trustee for the subsequent 30 day period

12. The Trustee shall be deemed to have waived the right of the estates with respect to a given Lender to seek a Bankruptcy Code section 506(c) surcharge, effective only during the

period that the Trustee is authorized to use cash collateral of that Lender under this Order and all previous cash collateral orders entered in the Debtors' bankruptcy cases.

13. The Trustee's authority to use cash collateral of any Lender under this Order shall, at the written election of any such Lender, terminate upon the occurrence of any of the following "Termination Events": (a) conversion of any of the Debtors' cases to a chapter 7; (b) failure to timely deliver adequate protection payments; (c) failure to timely provide financial reporting; or (d) variance of more than 10% for any budgeted line item and 10% in the aggregate, and revenues are less than 90% of the amount projected. With respect to this subsection (d), any variance shall be determined by reference to the Variance Report (comparing cash collateral budget to actual figures) for that month.

14. Stipulations for use of cash collateral between the Trustee and Wells Fargo, and approved by the Committee, for periods subsequent to December 31, 2009, may be submitted for Court approval without further notice.

15. This Order is without prejudice to the rights of any Lender under any pending or future motion for relief from stay.

16. Lenders are entitled to all applicable protections of Bankruptcy Code section 507(b), including to the extent of any diminution in the value of a Lender's interest in its collateral as the result of the use of its cash collateral as authorized by this Order and all previous cash collateral orders entered in these bankruptcy cases.

17. Notwithstanding the possible applicability of FRBP 6004 or 7062, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18. The Trustee is authorized to sign such documents and to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

///

///

///

Order Granting Motion to
Use of Cash Collateral

-5-

respect to the Motion in these cases, the terms of this Order shall govern.

///

///

///

20. The Court will retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**APPROVED AS TO FORM AND CONTENT:**

_____
Robert A. Trodella, Jr., Esq.
Jones Day
Counsel for Wells Fargo Bank, National Association


_____
Brian Bob, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
Counsel for Mechanics Bank


/s/ Thomas R. Phinney    12/21/09
_____
Thomas R. Phinney, Esq.
Parkinson Phinney
Counsel for Creditors Committee

_____
Walter Dahl
Dahl & Dahl, Attorneys at Law
Counsel for Redding Bank


_____
Michele S. Assayag, Esq.
Assayag Mauss
Counsel to Union Bank


_____
Ronald H. Sargis, Esq.
Hefner, Stark & Marois, LLC
Counsel for Exchange Bank

20. The Court will retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**APPROVED AS TO FORM AND CONTENT:**

_____
Robert A. Trodella, Jr., Esq.
Jones Day
Counsel for Wells Fargo Bank, National Association


*[signature]*
_____
Brian Bobb, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
Counsel for Mechanics Bank


_____
Thomas R. Phinney, Esq.
Parkinson Phinney
Counsel for Creditors Committee


_____
Walter Dahl
Dahl & Dahl, Attorney sat Law
Counsel for Redding Bank


_____
Michele S. Assayag, Esq.
Assayag Mauss
Counsel to Union Bank


_____
Ronald H. Sargis, Esq.
Hefner, Stark & Marois, LLC
Counsel for Exchange Bank


_____
George C. Hollister, Esq.
Hollister Law Corporation
Counsel for BY Investments


_____
Vincent J. Novak
Morrison & Foerster, LLP

respect to the Motion in these cases, the terms of this Order shall govern.

///

///

///

20. The Court will retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**APPROVED AS TO FORM AND CONTENT:**

*[signature]*

Robert A. Trodella, Jr., Esq.
Jones Day
Counsel for Wells Fargo Bank, National Association

_____
Brian Bob, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
Counsel for Mechanics Bank

/s/ Thomas R. Phinney    12/21/09
Thomas R. Phinney, Esq.
Parkinson Phinney
Counsel for Creditors Committee

_____
Walter Dahl
Dahl & Dahl, Attorney sat Law
Counsel for Redding Bank

_____
Michele S. Assayag, Esq.
Assayag Mauss
Counsel to Union Bank

*[signature]*

Ronald H. Sargis, Esq.
Hefner, Stark & Marois, LLC
Counsel for Exchange Bank

////

///

20. The Court will retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**APPROVED AS TO FORM AND CONTENT:**

_____
Robert A. Trodella, Jr., Esq.
Jones Day
Counsel for Wells Fargo Bank, National Association


_____
Brian Bob, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
Counsel for Mechanics Bank


_____
Thomas R. Phinney, Esq.
Parkinson Phinney
Counsel for Creditors Committee


_____
Walter Dahl
Dahl & Dahl, Attorney sat Law
Counsel for Redding Bank


   /s/ Michele S. Assayag_____
Michele S. Assayag, Esq.
Assayag Mauss
Counsel to Union Bank


_____
Ronald H. Sargis, Esq.
Hefner, Stark & Marois, LLC
Counsel for Exchange Bank


   /s/ George C. Hollister_____
George C. Hollister, Esq.
Hollister Law Corporation
Counsel for BY Investments

1     20. The Court will retain jurisdiction with respect to all matters arising from or related
2 to the implementation of this Order.

3 **APPROVED AS TO FORM AND CONTENT:**

4

5 _____
Robert A. Trodella, Jr., Esq.
6 Jones Day
Counsel for Wells Fargo Bank, National Association
7

8

9 _____
Brian Bob, Esq.
10 Jeffer, Mangels, Butler & Marmaro LLP
Counsel for Mechanics Bank
11

12 _____
Thomas R. Phinney, Esq.
13 Parkinson Phinney
Counsel for Creditors Committee
14

15 _____
Walter Dahl
16 Dahl & Dahl, Attorney sat Law
Counsel for Redding Bank
17

18 _____
Michele S. Assayag, Esq.
19 Assayag Mauss
Counsel to Union Bank
20

21 _____
Ronald H. Sargis, Esq.
22 Hefner, Stark & Marois, LLC
Counsel for Exchange Bank
23

24 _____
George C. Hollister, Esq.
25 Hollister Law Corporation
Counsel for BY Investments
26
 *[signature]*
27 _____
Vincent J. Novak
28 Morrison & Foerster, LLP
Counsel for Intervest-Mortgage Investment Company

1

2  _____
   Vincent J. Novak
3  Morrison & Foerster, LLP
   Counsel for Intervest Mortagage

4
    /s/ Robert H. Brumfield
5  Robert H. Brumfield, III, Esq.
   Kronick, Moskovitz, Tidemann & Girard
6  Counsel to Umpqua Bank

7

8

9

10  Dated: January 06, 2010

11

12                                          _____
13                                          United States Bankruptcy Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Granting Motion to
Use of Cash Collateral

EXHIBIT A

**Kobra Properties, Kobra Preserve and Vernon Street Associates - Cash Collateral Budget**
Numbers in $000

| | Proposed Budget Dec-09 | Proposed Budget Jan-10[1] | Proposed Budget Feb-10[1] | Wells Fargo Stub Period[1] | Comment Refs |
|---|---:|---:|---:|---:|:---:|
| **STABILIZED** | | | | | |
| Gross Revenue - Stabilized Real Estate | 1,158 | 1,158 | 1,158 | - | A |
| Less: Bad debt adjustment | (23) | (23) | (23) | - | B |
| Less: Operating Expenses, Taxes & Insurance | (314) | (275) | (285) | (179) | C |
| **NOI from Stabilized Real Estate** | 821 | 860 | 850 | (179) | |
| Less: Capital Expenditures | (6) | (6) | (6) | - | |
| **Cash Flow Before Debt Service** | 815 | 854 | 844 | (179) | |
| Less: Adequate Protection Payments | (533) | (479) | (492) | - | D |
| **Total Source/(Use) of Funds - Stabilized RE** | 282 | 375 | 352 | (179) | |
| **CON** | | | | | |
| Gross Revenue - Real Estate in Lease-up/Construction | - | - | - | - | |
| Less: Operating Expenses (incl Property Taxes) | (91) | (20) | (20) | (20) | E |
| **Total Source/(Use) of Funds - RE in Lease-up/Construct** | (91) | (20) | (20) | (20) | |
| **LAND** | | | | | |
| Gross Revenue - Real Estate - Land | - | - | - | - | |
| Less: Operating Expenses and Insurance | (4) | (4) | (2) | (6) | E |
| Less: Property Taxes | - | - | - | - | E |
| **Total Source/(Use) of Funds - Land** | (4) | (4) | (2) | (6) | |
| **OVERHEAD** | | | | | |
| Overhead | | | | | |
| Bank Fees | (5) | (5) | (5) | (5) | |
| Payroll & Payroll Taxes | (41) | (41) | (41) | (20) | |
| Health Benefits | (1) | (1) | (1) | (1) | |
| Insurance - Workers Comp/General Liability | (4) | (4) | (4) | - | |
| Office Rent | (22) | (22) | (22) | - | |
| Travel/Marketing | (2) | (2) | (2) | - | |
| Utilities/Telephone | (5) | (5) | (5) | (5) | |
| Office Supplies | (2) | (2) | (2) | (2) | |
| Accountants - Outside | (15) | (15) | (15) | - | F |
| Attorneys/Legal - Outside | (60) | (60) | (60) | - | G |
| Miscellaneous (Reimbursed Expenses & Software Costs) | (3) | (3) | (3) | - | |
| Management fees incl in property budgets (other income) | 23 | 23 | 23 | - | |
| **TOTAL OVERHEAD** | (137) | (137) | (137) | (33) | |
| **BKO** | | | | | |
| Bankruptcy Overhead | | | | | |
| UST Quarterly Fees | - | - | - | (13) | |
| Creditors Committee | (15) | (15) | (15) | - | |
| Trustee & DSI | (100) | (100) | (100) | - | |
| Trustee Counsel | (85) | (85) | (85) | - | |
| **BANKRUPTCY OVERHEAD** | (200) | (200) | (200) | (13) | |
| **Beginning Book Cash Balance** | 632 | 481 | 496 | 509 | H |
| Total Sources/(Uses) of Funds before Overhead | 186 | 351 | 350 | (204) | |
| Total Overhead | (337) | (337) | (337) | (46) | |
| **Ending Book Cash Balance** | 481 | 496 | 509 | 259 | |
| Less Restricted Cash Balances: | | | | | |
| Professional Fees - Escrow Accounts | 172 | 172 | 172 | 172 | |
| Use & Occupancy Rent Reserve | 20 | 20 | 20 | 20 | |
| Real Estate Tax Reserve | - | - | - | - | I |
| Security Deposit Accounts | 160 | 160 | 160 | 160 | |
| Restaurant Restricted | 130 | 144 | 158 | 158 | J |
| Other Restricted Accounts | - | - | - | - | J |
| **Pre-Termination Expenses (WFB)** | (0) | 0 | (0) | (250) | |

All non-Wells Fargo properties are assumed to be sold or abandoned by the end of Feb 2010.
All Wells Fargo properties are assumed to be turned over to the bank by the end of Feb 2010. If the Wells Fargo properties
are not turned over by the end of Feb 2010, a new budget for Mar 2010 will need to be created.

[1] Cash collateral of Wells Fargo allocated for any line item expenses or reserves that are not actually incurred (which for professional
fees and costs will not be determined until final fee applications) shall remain the cash collateral of Wells Fargo and shall be
promptly paid over to Wells Fargo for application to its loan balances.

**Comments on Budget Line Items:**

A  Dec-Feb rent includes Wells and non-Wells properties.

B  A bad debt reserve has been included to make the budget more conservative.

C  Operating expenses are higher than previous months due to snow removal costs and increased utilities.
Jan and Feb operating expenses are increased by the est. down payment for annual insurance renewals on a majority of the Wells properties.
Expenses included in the Wells Fargo Stub period represent payments for operating expenses incurred during Feb and
normally paid in the following month.

The only non-Wells properties on which property taxes have been/will be paid are those that are sold and Clovis.

| D | Adequate Protection Payments | Dec-09 | Jan-10 | Feb-10 |
|---|---|---|---|---|
| | Bank of New York Mellon | 3,138 | 3,138 | 3,138 |
| | B-Y Investments[2] | - | - | - |
| | Exchange Bank | 20,263 | 20,263 | 20,263 |
| | First Horizon | 5,816 | 5,816 | 5,816 |
| | Intervest | 20,000 | 20,000 | 20,000 |
| | Irwin Franchise Capital Corporation[3] | 5,350 | 5,350 | 5,350 |
| | Mechanics Bank | 9,257 | 9,257 | 9,257 |
| | Redding Bank of Commerce | 9,806 | 9,806 | 9,806 |
| | Union Bank of California[2] | 33,392 | 33,392 | 33,392 |
| | Umpqua Bank | 1,833 | 1,833 | 1,833 |
| | Wells Fargo (Collateral Pool) | 205,634 | 179,449 | 185,753 |
| | Wells Fargo Bank | 218,426 | 190,611 | 197,307 |
| | **Total** | **532,915** | **478,915** | **491,915** |

[2] The adequate protection payments to B-Y Investments for two JIB properties were previously $8,392 each. These payments will not be made to
B-Y from Dec-Feb. Instead, the full amount of rents received on these two JIB properties will be paid to Union Bank: $4,452 will be applied
to adequate protection and $22,945 will be a reduction of principal.

[3] The Trustee is investigating the status of the land lease payment at the JIB Herndon location. If the payment is not made by the tenant,
the amount paid to the lender may be withheld to cover the land lease.

It is assumed that the Wells Fargo properties will be turned over to the bank by the end of Feb.

E  The majority of the normal operating expenses for construction projects are for Stanford Ranch Corporate Center.
These line items also include the known estimated winterization costs for Wells Fargo assets - $9k for Construction projects and
$18k for Land assets were budgeted in Nov. An additional $71k in winterization costs are budgeted in Dec for Wells assets.
It is likely that additional work will be required beyond that budgeted herein.

F  Reflects budgeted fees of $15k to D. Hurst, CPA.

G  Reflects budgeted special counsel fees: Boutin - $40k, Mennemeier - $15k, other - $5k.

H  12/1 cash balance equals end-of-month bank balance ($772k) less prepaid December rent ($70k-Hanna) less outstanding checks ($75k).

I  The real estate tax reserve balance at 12/1/09 is $71k. The budget reflects the use of these funds to pay property taxes.

A recap of the budgeted Wells Fargo property taxes is below:

| Property Tax Payments | Past Due Taxes | 1st Install. Due | 2nd Install. Due | Total Due |
|---|---|---|---|---|
| Stabilized Properties | 4,196,506 | 1,141,888 | 398,733 | 5,737,127 |
| Construction Properties | 254,643 | 106,302 | - | 360,945 |
| Land Properties | 339,180 | 97,932 | 11,286 | 448,398 |
| Total Property Taxes Due | 4,790,329 | 1,346,123 | 410,019 | 6,546,470 |
| Amount Paid from Real Estate Tax Reserve | - | (71,206) | - | (71,206) |
| Amount Paid on April 10, 2009[4] | (474,034) | - | - | (474,034) |
| Funds to be Advance by Wells Fargo | 4,316,295 | 1,274,917 | 410,019 | 6,001,230 |

[4] Per the Placer and Sacramento county tax authorities, the $474k payment made on April 10, 2009 has not been applied to the
outstanding balances. The reason given by the taxing authorities is because the payment did not bring the respective accounts
current, it was not applied at all, but instead held in a trust account. This will affect the reconciliation of the final payoff
amount for the affected properties.

J  The increase in Restaurant Restricted account balances due to monthly rent receipts for Buca - Howe Ave location
See Stabilized sheet for detail.


EXHIBIT B

**Adequate Protection Payment Schedule**
December 2009

| | Rent | Debt Svc - 1st Lien | Debt Svc - 2nd Lien | Debt Svc - 3rd Lien | Total Debt Service |
|---|---|---|---|---|---|
| WFB (Collateral Pool) | | (205,634) | | | (205,634) |
| WFB | | (218,426) | | | (218,426) |
| **Subtotal - WFB** | | **(424,060)** | | | **(424,060)** |
| Clovis | | (20,000) | | | (20,000) |
| Jack In the Box #3403 (S Main) | 10,500 | (3,138) | | | (3,138) |
| Jack in the Box #4367 (Twin Cities) | 13,000 | (9,061) | | | (9,061) |
| Jack in the Box #5379 (Herndon) | 7,365 | (5,350) | | | (5,350) |
| Jack in the Box #4372 (Oakhurst) | 13,000 | (9,257) | | | (9,257) |
| Jack in the Box #3401 (3040 Sunrise) | 10,393 | (2,916) | | | (2,916) |
| Jack in the Box #3435 (Stfrd Ranch)[1] | 12,000 | (1,348) | (1,833) | | (3,181) |
| Jack in the Box #4323 (7807 Sunrise)[1,2] | 13,000 | (13,000) | - | | (13,000) |
| Jack in the Box #570 (Douglas)[1,2] | 14,398 | (14,398) | - | | (14,398) |
| Jack in the Box #585 (Rocklin) | 13,091 | (1,730) | | | (1,730) |
| Jack in the Box #4368 (Andersen)[1] | 13,000 | (9,806) | - | | (9,806) |
| **Subtotal - Jack in the Box Lenders** | **119,747** | **(70,003)** | **(1,833)** | **-** | **(71,836)** |
| | Rent | Debt Svc - 1st Lien | Debt Svc - 2nd Lien | Debt Svc - 3rd Lien | Total Debt Service |
| Sonic Woodland | 16,667 | (11,203) | | | (11,203) |
| Sonic Pleasant Grove Blvd | 15,833 | (5,816) | | | (5,816) |
| Vacaville TGI Fridays | - | - | | | - |
| Howe Avenue-TGI Fridays[1] | - | - | - | | - |
| Howe Avenue-Buca Di Beppo | 12,810 | - | | | - |
| **Subtotal - Other Lenders** | **45,310** | **(17,019)** | **-** | **-** | **(17,019)** |
| **Total** | | **(531,082)** | **(1,833)** | **-** | **(532,915)** |

NOTE: Expected rents for restaurants are subject to change.

[1] **Multiple Lender Facilities**

| | 1st | 2nd | 3rd |
|---|---|---|---|
| Jack in the Box #570 (Douglas) | Union | BY | |
| Jack in the Box #3435 (Stfrd Ranch) | Union | Umpqua | |
| Jack in the Box #4323 (7807 Sunrise) | Union | BY | |
| Jack in the Box #4368 (Andersen) | Redding | Redding | |
| Howe Avenue - TGI Fridays | Stockman's | Export | Haven Properties |

[2] The following payments will be made to Union for the two locations on which Union and B-Y both have liens:
JIB 4323: Adequate protection - $2,651; Principal reduction - $10,349
JIB 570: Adequate protection - $1,802; Principal reduction - $12,596

**Adequate Protection Payment Schedule**
January 2010

|  | Debt Service | | | | Total Debt Service |
|---|---|---|---|---|---|
| WFB (Collateral Pool) | (179,449) | | | | (179,449) |
| WFB | (190,611) | | | | (190,611) |
| **Subtotal - WFB** | **(370,060)** | | | | **(370,060)** |
| Clovis | (20,000) | | | | (20,000) |
|  | Rent | Debt Svc - 1st Lien | Debt Svc - 2nd Lien | Debt Svc - 3rd Lien | Total Debt Service |
| Jack in the Box #3403 (S Main) | 10,500 | (3,138) | | | (3,138) |
| Jack in the Box #4367 (Twin Cities) | 13,000 | (9,061) | | | (9,061) |
| Jack in the Box #5379 (Herndon) | 7,365 | (5,350) | | | (5,350) |
| Jack in the Box #4372 (Oakhurst) | 13,000 | (9,257) | | | (9,257) |
| Jack in the Box #3401 (3040 Sunrise) | 10,393 | (2,916) | | | (2,916) |
| Jack in the Box #3435 (Stfrd Ranch)[1] | 12,000 | (1,348) | (1,833) | | (3,181) |
| Jack in the Box #4323 (7807 Sunrise)[1,2] | 13,000 | (13,000) | - | | (13,000) |
| Jack in the Box #570 (Douglas)[1,2] | 14,398 | (14,398) | - | | (14,398) |
| Jack in the Box #585 (Rocklin) | 13,091 | (1,730) | | | (1,730) |
| Jack in the Box #4368 (Andersen)[1] | 13,000 | (9,806) | - | | (9,806) |
| **Subtotal - Jack in the Box Lenders** | **119,747** | **(70,003)** | **(1,833)** | **-** | **(71,836)** |
|  | Rent | Debt Svc - 1st Lien | Debt Svc - 2nd Lien | Debt Svc - 3rd Lien | Total Debt Service |
| Sonic Woodland | 16,667 | (11,203) | | | (11,203) |
| Sonic Pleasant Grove Blvd | 15,833 | (5,816) | | | (5,816) |
| Vacaville TGI Fridays | - | - | | | - |
| Howe Avenue-TGI Fridays[1] | - | - | - | | - |
| Howe Avenue-Buca Di Beppo | 13,764 | - | | | - |
| **Subtotal - Other Lenders** | **46,264** | **(17,019)** | **-** | **-** | **(17,019)** |
| **Total** | | **(477,082)** | **(1,833)** | **-** | **(478,915)** |

NOTE: Expected rents for restaurants are subject to change.

[1] **Multiple Lender Facilities**

| | 1st | 2nd | 3rd |
|---|---|---|---|
| Jack in the Box #570 (Douglas) | Union | BY | |
| Jack in the Box #3435 (Stfrd Ranch) | Union | Umpqua | |
| Jack in the Box #4323 (7807 Sunrise) | Union | BY | |
| Jack in the Box #4368 (Andersen) | Redding | Redding | |
| Howe Avenue - TGI Fridays | Stockman's | Export | Haven Properties |

[2] The following payments will be made to Union for the two locations on which Union and B-Y both have liens:
JIB 4323: Adequate protection - $2,651; Principal reduction - $10,349
JIB 570: Adequate protection - $1,802; Principal reduction - $12,596

Adequate Protection Payment Schedule
February 2010

|  | Debt Service | | | | Total Debt Service |
|---|---|---|---|---|---|
| WFB (Collateral Pool) | (185,753) | | | | (185,753) |
| WFB | (197,307) | | | | (197,307) |
| **Subtotal - WFB** | **(383,060)** | | | | **(383,060)** |
| | | | | | |
| **Clovis** | **(20,000)** | | | | **(20,000)** |
| | Rent | Debt Svc - 1st Lien | Debt Svc - 2nd Lien | Debt Svc - 3rd Lien | Total Debt Service |
| Jack In the Box #3403 (S Main) | 10,500 | (3,138) | | | (3,138) |
| Jack in the Box #4367 (Twin Cities) | 13,000 | (9,061) | | | (9,061) |
| Jack in the Box #5379 (Herndon) | 7,365 | (5,350) | | | (5,350) |
| Jack in the Box #4372 (Oakhurst) | 13,000 | (9,257) | | | (9,257) |
| Jack in the Box #3401 (3040 Sunrise) | 10,393 | (2,916) | | | (2,916) |
| Jack in the Box #3435 (Stfrd Ranch)[1] | 12,000 | (1,348) | (1,833) | | (3,181) |
| Jack in the Box #4323 (7807 Sunrise)[1,2] | 13,000 | (13,000) | - | | (13,000) |
| Jack in the Box #570 (Douglas)[1,2] | 14,398 | (14,398) | - | | (14,398) |
| Jack in the Box #585 (Rocklin) | 13,091 | (1,730) | | | (1,730) |
| Jack in the Box #4368 (Andersen)[1] | 13,000 | (9,806) | - | | (9,806) |
| **Subtotal - Jack in the Box Lenders** | **119,747** | **(70,003)** | **(1,833)** | **-** | **(71,836)** |
| | Rent | Debt Svc - 1st Lien | Debt Svc - 2nd Lien | Debt Svc - 3rd Lien | Total Debt Service |
| Sonic Woodland | 16,667 | (11,203) | | | (11,203) |
| Sonic Pleasant Grove Blvd | 15,833 | (5,816) | | | (5,816) |
| Vacaville TGI Fridays | - | - | | | - |
| Howe Avenue-TGI Fridays[1] | - | - | - | | - |
| Howe Avenue-Buca Di Beppo | 13,764 | - | | | - |
| **Subtotal - Other Lenders** | **46,264** | **(17,019)** | **-** | **-** | **(17,019)** |
| | | | | | |
| **Total** | | **(490,082)** | **(1,833)** | **-** | **(491,915)** |

NOTE: Expected rents for restaurants are subject to change.

[1] **Multiple Lender Facilities**

| | 1st | 2nd | 3rd |
|---|---|---|---|
| Jack in the Box #570 (Douglas) | Union | B-Y | |
| Jack in the Box #3435 (Stfrd Ranch) | Union | Umpqua | |
| Jack in the Box #4323 (7807 Sunrise) | Union | B-Y | |
| Jack in the Box #4368 (Andersen) | Redding | Redding | |
| Howe Avenue - TGI Fridays | Stockman's | Export | Haven Properties |

[2] The following payments will be made to Union for the two locations on which Union and B-Y both have liens:
JIB 4323: Adequate protection - $2,651; Principal reduction - $10,349
JIB 570: Adequate protection - $1,802; Principal reduction - $12,596